UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELINDA L. MALONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01009-SEB-MJD |
| | ) | |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Melinda Maloney applied for supplemental security income from the Social Security Administration ("SSA") on April 9, 2014, alleging a disability onset date of August 1, 1998. [Filing No. 13-5 at 2.] Her application was initially denied on June 13, 2014, [Filing No. 13-4 at 2], and upon reconsideration on September 12, 2014, [Filing No. 13-4 at 9]. The ALJ held a hearing on February 16, 2016, [Filing No. 13-2 at 47-72], and issued a decision on March 10, 2016, concluding that Ms. Maloney was not entitled to receive supplemental security income, [Filing No. 13-2 at 23]. The Appeals Council denied review on February 23, 2017. [Filing No. 13-2 at 2.] On March 31, 2017, Ms. Maloney timely filed this civil action asking the Court to review the denial of benefits, pursuant to 42 U.S.C. § 1383(c). [Filing No. 1.] For the reasons detailed below, decision of the ALJ is REVERSED and the case REMANDED for action consistent with the opinion.

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory

definition of 'disability' consists of two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), we afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ is required to apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v) in making disability determinations, evaluating the factors in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four

is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. See *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Maloney was 43 years old at the time she applied for supplemental security income. [Filing No. 13-5 at 2.] She had completed high school and previously worked as a telephone inspector. [Filing No. 13-2 at 37-38.][1]

---

[1] Both parties provided a detailed description of Ms. Maloney's medical history and treatment in their briefs. [Filing No. 16; Filing No. 17.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Maloney, we will simply incorporate

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Ms. Maloney is not disabled. [Filing No. 13-2 at 39.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Maloney has not engaged in substantial gainful activity[2] since March 26, 2014, her application date. [Filing No. 13-2 at 28.]

- At Step Two, the ALJ found that Ms. Maloney has the following severe impairments: "low back pain; obesity; post-traumatic stress disorder; and generalized anxiety disorder." [Filing No. 13-2 at 28.]

- At Step Three, the ALJ found that Ms. Maloney does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 13-2 at 30.]

- After Step Three but before Step Four, the ALJ also found that Ms. Maloney has the RFC to "perform medium work as defined in 20 CFR 416.967(c) except she can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours during an eight-hour workday; and sit for six hours during an eight-hour workday; must be allowed to alternate to sitting or standing position for one to two minutes each hour; occasionally climb ramps and stairs; never kneel, crawl, or climb ladders, ropes, and scaffolds; avoid work at unprotected heights, around dangerous moving machinery, operating a motor vehicle, around open flames, and around large bodies of water; work should be such that it can be learned in 30 days or less or by short demonstration; and no more than superficial interaction with the public coworkers, and supervisors." [Filing No. 13-2 at 33-34.]

- At Step Four, the ALJ concluded, after considering Ms. Maloney's age, education, work experience, and RFC and relying on the testimony of the vocational expert ("VE"), that Ms. Maloney is incapable of performing her past relevant work as a telephone inspector. [Filing No. 13-2 at 37.]

- At Step Five, the ALJ found that considering Ms. Maloney's age, education, and RFC she could perform other jobs that exist in significant numbers in the national economy. The ALJ found that Ms. Maloney could work as a merchandise marker, sub assembler, and an electrical accessory assembler. [Filing No. 13-2 at 38.]

those facts by reference and detail specific facts only as necessary to address the parties' arguments.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

# III.

## DISCUSSION

Ms. Maloney makes two assertions of error regarding the ALJ's decision, each of which we consider in turn below.

### A. Whether the ALJ Erred by Failing to Evaluate the Two Third-Party Statements Completed by Ms. Maloney's Case Manager, Robyn Brush, as Required by Social Security Ruling 06-03p and 20 C.F.R. § 416.972(f)

Ms. Maloney asserts that the ALJ mentioned two third-party reports filled out by Ms. Maloney's case manager, Ms. Brush, but did not evaluate them at any point in the decision. [Filing No. 16 at 20.] Ms. Maloney argues that summarizing the statements is not enough, that "the ALJ must perform the judicial function of weighing evidence," and that it "is not possible to tell if the ALJ accepted all of [Ms.] Brush's statements, rejected all of [Ms.] Brush's statements, or accepted some and rejected others." [Filing No. 16 at 21.]

The Commissioner responds that the ALJ reasonably assessed Ms. Maloney's mental impairments and the RFC includes all the limitations supported by the record. [Filing No. 17 at 6.] The Commissioner further maintains that the ALJ considered all the opinion evidence related to Ms. Maloney's impairments, including giving great weight to the opinions of two doctors. [Filing No. 17 at 9.] With regard to the third-party reports of Ms. Brush, the Commissioner notes that the ALJ explicitly referred to the reports, that the "ALJ need not give 'good reasons' for the weight given such opinions; instead, he merely needs to consider [them] and explain the weight given," citing Social Security Ruling ("SSR") 06-03p. [Filing No. 17 at 10.] The Commissioner concludes that "[d]espite not explicitly explaining the weight he gave Ms. Brush's opinion, the ALJ's extensive discussion of her reports allows this Court to follow his reasoning and shows that he credited Ms. Brush's opinion on [Ms. Maloney's] limitations." [Filing No. 17 at 10.]

Both parties agree that SSR 06-03p is controlling, given the filing date of Ms. Maloney's claim. [Filing No. 16 at 16; Filing No. 17 at 10 (including footnote 30.] Both parties also agree that Ms. Brush would be considered an "other source" for purposes of applying the ruling to her specific opinions. [Filing No. 16 at 17; Filing No. 17 at 10.] We note that Ms. Brush, as a case manager for Ms. Maloney, through her employer Centerstone, had contact in a professional capacity with Ms. Maloney on a weekly basis. [Filing No. 13-6 at 24 and Filing No. 13-6 at 51.] Ms. Maloney asserts that "non-medical sources who have contact with the claimant in their professional capacities are 'valuable sources of evidence for assessing impairment severity and functioning. Often these sources have close contact with the individual and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time.'" [Filing No. 16 at 17; citing SSR 06-03p.] The ruling describes the ALJ's obligation with regard to such sources:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Ms. Brush proffered several opinions regarding Ms. Maloney's functioning. For example, when asked if Ms. Maloney could "go out alone", Ms. Brush responded, "No," due to her "[l]ack of personal mode of transportation. [And that she] [d]oes not use public transportation due to social and general anxiety." [Filing No. 13-6 at 27.] When asked the same question in a later report, she again said, "No," adding that "[s]he does not go out alone due to anxiety. She has panic attacks in public places." [Filing No. 13-6 at 54.] When asked if Ms. Maloney "need[s] someone to accompany" her, Ms. Brush indicated "yes," adding it was "[d]ue to anxiety." [Filing No. 13-6 at

28; see also Filing No. 13-6 at 55.]  Ms. Brush further stated that Ms. Maloney "needs guidance with tasks in the community such as grocery shopping and using community resources due to social phobia.  She does not leave the house alone due to anxiety."  [Filing No. 13-6 at 31.]

Ms. Brush also contributed several observations as to Ms. Maloney's functioning, which could have a bearing on her work setting.  For example, when asked how well Ms. Maloney gets along with authority figures, Ms. Brush responded, "Not well.  She often perceives judgment/disrespect when it is not necessarily present due to sensitivity from social phobia.  She projects these fears in interactions and struggles to communicate, and often ends up in tears." [Filing No. 13-6 at 30.]  When asked how Ms. Maloney handles stress, Ms. Brush responded, "Poorly.  Exhibits signs of anxiety.  Often does not follow through with important tasks due to anticipating poor outcomes."  [Filing No. 13-6 at 30.]  Mr. Brush also noted that Ms. Maloney requires reminders to take her medications.  [Filing 13-6 at 53.]

We agree with Ms. Maloney that the ALJ's evaluation of Ms. Brush's observations and opinions is inadequate.  The entirety of the ALJ's discussion of Ms. Brush's opinions is as follows:

> Robyn Brush, the claimant's case manager, reported the claimant does not have problems taking care of her personal needs except for physical limitations.  She continued that the claimant is able to prepare simple meals and that she is able to do dishes, laundry, vacuuming, sweeping, and mopping.  Ms. Brush also stated the claimant is able to go grocery shopping once a week for 30 to 60 minutes, and with assistance from her case manager or family and that she spends the remainder of her time caring for her children, reading, and taking naps. (Exs. 5E and 9E).

> The claimant and her case manager have described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

> […]

> The claimant's case manager, Robyn Brush, reported the claimant has problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, memory, completing tasks, and getting along with others.  Ms. Brush continued the claimant can walk for five to 15 minutes at a time before she

> has to stop and rest for five to 15 minutes. She also stated the claimant is able to pay attention and can sometimes complete tasks that she begins. Ms. Brush further reported the claimant has problems getting along with others because she has trouble communicating and perceives that others are judging and sabotaging her. (Exs. 5E and 9E).

[Filing No. 13-2 at 36.] The Commissioner admits that the ALJ did not explicitly indicate the weight he had given to Ms. Brush's assessments. [Filing No. 17 at 10.] However, the Commissioner argues that the ALJ's "extensive discussion of her reports allows this Court to follow his reasoning and shows that he credited Ms. Brush's opinion on [Ms. Maloney's] limitations." [Filing No. 17 at 10.] For support, the Commissioner invokes the holding in *Filis v. Astrue* that the "ALJ need only 'minimally articulate his reasoning' in order to satisfy his duty to build a logical bridge from the evidence to his conclusions." [Filing No. 17 at 10-11; citing *Filis v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012).]

We begin by noting that in our opinion *Filis* is not controlling here. In *Filis*, the "ALJ explained which opinions he had accepted and which he had discounted in reaching [his] conclusions and why." *Filis*, 694 F.3d at 866. With regard to doctor's opinions which the plaintiff had argued were improperly rejected, the Court noted that the "ALJ […] gave little weight to Dr. Owen's opinion that Filis has severe difficulties with common tasks because it was inconsistent with other record evidence. Finally, the ALJ discounted Dr. Sajadi's opinion that he could complete only six hours of an eight-hour workday (with two-hour long stretches of standing or sitting) because it was not supported by Dr. Sajadi's 'otherwise normal examination.'" *Id.* at 867. The Court concluded that the "ALJ's rejection of these two opinions was somewhat cursory because he did not specify the 'other' record evidence that undermined the doctors' opinions. But we require only that the ALJ 'minimally articulate' his reasoning." *Id.* at 869.

In the case at bar, the ALJ did not specify the weight he attributed to Ms. Brush's opinions. It might be possible in a rare case to infer from the evidence the weight given to a particular opinion, if it was not specifically noted in the decision. Such is not the case here. The ALJ omitted any mention of his reason for not following or otherwise considering Ms. Brush's input. The ALJ's sole reference states that Ms. Maloney and "her case manager have described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." [Filing No. 13-2 at 36.] Curiously, this statement reflects that Ms. Maloney's disabling complaints were not deemed credible in part due to Ms. Brush's statements; it clearly does explain whether Ms. Brush herself was deemed credible. The ALJ has not set forth any reason for his discounting of Ms. Brush's credibility.

One could maintain that the ALJ actually found Ms. Brush's statements to be credible. The Commissioner seems to concede as much in holding that "the ALJ's extensive discussion of her reports allows this Court to follow the reasoning and shows that he credited Ms. Brush's opinion on [Ms. Maloney's] limitations." [Filing No. 17 at 10.] The Commissioner continues, stating that the ALJ's RFC actually incorporated all of the limitations opined by Ms. Brush. [Filing No. 17 at 11.] However a close review of the limitations noted by Ms. Brush is incompatible with Ms. Maloney's ability to work independently in the national economy, given her need for accompaniment when leaving the house to access community resources, her inability to manage stress and accept criticism from authority figures (such as a supervisor). These limitations are clearly material to a disability determination. [Filing No. 16 at 21-23; citing SSR 85-15 (stating that a "substantial loss of ability to meet any of [the] basic work related activities [described in the ruling, similar to those above] would severely limit the potential occupation base [and] in turn, would justify a finding of disability").]

The ALJ's assessment that Ms. Brush's description of Ms. Maloney's daily activities was not as limited as might be expected, given her complaints of disabling symptoms and limitations is unconvincing. An individual cannot work independently in the workforce if because of her social phobias and resulting panic attacks, she needs accompaniment in public and her mental instability magnifies the seriousness of supervisor criticism and her paranoia results in isolation and an inability to follow through on important tasks. We are left to wonder whether the ALJ even noticed the apparent discrepancy between his findings and Ms. Brush's opinions.

Thus, because we cannot trace the ALJ's logic or reasonably determine from the decision how if it all he weighed Ms. Brush's opinions, we find Ms. Maloney's objections meritorious.

**B. Whether the ALJ Took Into Account that Someone with Ms. Maloney's Social Limitations is Likely Incapable of Completing the Probationary Periods for the Employment Positions Referenced in Denying Ms. Maloney's Claim**

Ms. Maloney contends, based on the VE's testimony in response to a hypothetical, that the ALJ's RFC limitation of no more than superficial interaction with supervisors, would necessarily preclude her from completing the probationary period for work that the ALJ determined she could perform. [Filing No. 16 at 24.] Ms. Maloney references a prior holding of our Court, wherein we stated: "Here in lies the problem. [The other jobs the claimant was found capable of] require a worker to go through a probationary period during which she must have more than brief, superficial interaction with supervisors and co-workers. Yet, according to the ALJ, [the claimant] is not able to do that." [Filing No. 16 at 25; citing *Shelton v. Colvin,* 2015 U.S. Dist. LEXIS 177388 at *8-9 (S.D. Ind. October 13, 2015).]

We need not resolve this issue, given our prior ruling that remand is required here, and so we won't, except to note in passing that the case referenced above does not relate precisely to the issue for which it is cited. On remand, we encourage the ALJ to reexamine this claim as well.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Maloney's benefits and **REMANDS** the case for further proceedings, pursuant to 42 U.S.C. § 405(g) (sentence 4), as detailed above. Final Judgment shall issue accordingly.

Date: _____1/18/2018_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com